UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD FITZGERALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CV 1133 RWS |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM AND ORDER

Plaintiff Donald Fitzgerald brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision denying his application for disability insurance benefits under Title II of the Social Security Act.  For the reasons explained below, I will affirm the Commissioner's decision.

## Background

Fitzgerald protectively filed a Title II application for disability insurance benefits on December 25, 2017.  (Tr. 219–20).  Fitzgerald alleged that he became disabled on October 12, 2017, due to an ulnar collateral ligament ("UCL") tear in his left thumb, a sprang in his left thumb joint, a concussion, and a neck and back

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

injury.  (Tr. 220–21).  Fitzgerald's alleged impairments stemmed from a car accident in May 2017,[2] and the date of his alleged onset of disability is the date on which he underwent UCL repair surgery on his left thumb.  (Tr. 197, 315, 413).

Fitzgerald's application was denied at the initial claims level.  (Tr. 231, 233–34).  Fitzgerald then filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  (Tr. 238–41).  A hearing was held on July 22, 2019.  (Tr. 178, 180).   On September 27, 2019, the ALJ issued a decision denying Fitzgerald disability benefits, finding that Fitzgerald was not under a disability from October 12, 2017, through the date of her decision.  (Tr. 171).  Fitzgerald appealed the ALJ's decision, but the Appeals Council denied his request for review.  (Tr. 1–4).  As a result, the ALJ's decision denying Fitzgerald disability benefits became the final decision of the Commissioner.  See 42 U.S.C. § 405(g).

Fitzgerald filed this action on August 25, 2020, seeking judicial review of the Commissioner's final decision.  Fitzgerald contends that reversal and remand is required because the ALJ failed to conduct a proper pain evaluation and because the ALJ's residual functional capacity ("RFC") determinations are not supported by substantial evidence.   Fitzgerald requests that I reverse and remand the Commissioner's decision for a calculation and award of benefits or remand this matter for further evaluation.

---

[2] As discussed below, Fitzgerald was in a second car accident in September 2018.  (Tr. 591).

## **Legal Standard**

To be eligible for disability benefits under the Social Security Act, a claimant must prove that he is disabled.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity" due to a "medically determinable physical or mental impairment" that can be expected to result in death or which has lasted or can be expected to last for at least twelve continuous months.  42 U.S.C. § 423(d)(1)(A).  A claimant will be declared disabled if his impairment or combination of impairments is of such severity that he is unable to engage in his previous work and—considering his age, education, and work experience—he is unable to engage in any other kind of substantial gainful work in the national economy.  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner engages in a five-step evaluation process: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the claimant has the RFC to perform his past relevant work; and (5) whether the claimant has the RFC to perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. § 404.1520.

The burden of proof rests with a claimant through the first four steps but shifts to the Commissioner at step five.  Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009).

When reviewing a denial of disability benefits, my role is limited to determining whether the Commissioner's decision complies with the relevant legal requirements and is supported by substantial evidence on the record as a whole.  Id.  Substantial evidence refers to less than a preponderance but enough for a reasonable person to find it adequate to support the Commissioner's decision.  Id.  I must affirm the Commissioner's decision if, "after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions."  Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

## ALJ Decision

In this case, the ALJ denied Fitzgerald disability benefits after finding that he was not under a disability from his alleged onset date of October 12, 2017, through the date of her decision, September 27, 2019.  (Tr. 171).  At step one, the ALJ found that Fitzgerald had not engaged in substantial gainful activity since October 12, 2017.  (Tr. 164).  At step two, the ALJ found that Fitzgerald had the following severe impairments: degenerative disc disease, status post cervical fusion, arthritis of the

left thumb joint, and diabetes mellitus.  (Id.)  The ALJ also found that Fitzgerald had a non-severe impairment: adjustment disorder with depression and anxiety.  (Id.)[3]

At step three, the ALJ found that Fitzgerald's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 165).  Because Fitzgerald's impairments or combination of impairments did not meet or medically equal a listed impairment, the ALJ proceeded to steps four and five.  The ALJ approached these steps by assessing Fitzgerald's RFC for two different periods: (1) October 12, 2017, through September 25, 2018—the date of Fitzgerald's second car accident; and (2) September 25, 2018, through September 27, 2019.  (Tr. 165–69).

For the period of October 12, 2017, through September 25, 2018, the ALJ found that Fitzgerald had the RFC to perform light work, including the ability to lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and/or walk up to six hours in an eight-hour workday; sit up to six hours in an eight-hour workday; and occasionally reach overhead on his left side.  (Tr. 165).  The ALJ also found that Fitzgerald could not climb ladders, ropes, or scaffolds.  (Id.)  Based on

---

[3] Fitzgerald does not appear to contest the ALJ's determinations regarding his mental impairments. In support of his complaint, Fitzgerald briefly notes that he has complained of an inability to follow instructions, understand, concentrate, and complete tasks.  However, beyond the single sentence noting those complaints, Fitzgerald does not discuss how the ALJ erred with respect to his mental impairments.  My analysis will, therefore, focus on Fitzgerald's physical impairments.

this RFC and the testimony of a vocational expert, the ALJ found that Fitzgerald was able to perform past relevant work as an IT salesperson. (Tr. 167–68).

For the period of September 25, 2018, through September 27, 2019, the ALJ found that Fitzgerald had the RFC to perform sedentary work, including the ability to lift and carry up to ten pounds occasionally and less than ten pounds frequently; stand and/or walk up to two hours in an eight-hour workday; sit up to six hours in an eight-hour workday; frequently handle and finger; and occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and reach overhead. (Tr. 168). The ALJ also found that Fitzgerald could not climb ladders, ropes, or scaffolds and that he needed to avoid extreme cold, humidity, wetness, vibration, and hazards. (Id.) Based on this RFC and the testimony of a vocational expert, the ALJ found that Fitzgerald was unable to perform any of his past relevant work. (Tr. 169). However, the vocational expert identified the following jobs within Fitzgerald's RFC as existing in significant numbers in the national economy: document preparer (30,000 positions); eyeglass polisher (18,000 positions); and egg processor (27,000 positions). (Tr. 170).

## **Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt Fitzgerald's recitation of facts, (Doc. 24-1), as they are admitted by the Commissioner, (Doc. 29-1). Additional facts will be discussed as necessary to address the parties' arguments.

## Discussion

### A.    Pain Evaluation

Fitzgerald contends that reversal and remand is required because the ALJ failed to perform a proper pain evaluation.  Fitzgerald asserts that the ALJ failed to perform a proper pain evaluation because she discounted his subjective complaints without considering several factors set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), and without identifying specific inconsistencies between his subjective complaints and the evidence in the record.  After reviewing the record, I find that the ALJ properly assessed Fitzgerald's subjective complaints and that her assessment is supported by substantial evidence on the record as a whole.

When evaluating evidence of pain or other symptoms, an ALJ is never free to ignore a claimant's subjective complaints.  Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  An ALJ may discount a claimant's subjective complaints, however, if "they are inconsistent with the evidence as a whole."  Milam v. Colvin, 794 F.3d 978, 984 (8th Cir. 2015).  In doing so, an ALJ must consider all of the evidence and make an express determination, detailing her reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record, and discussing the relevant factors set forth in Polaski. Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012).

7

The relevant factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) the claimant's functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence supporting the claimant's complaints. Id. at 1065–66; see also 20 C.F.R. § 404.1529(c).  While an ALJ must consider these factors, she need not discuss how each factor supports her determination. Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007).  Nor is an ALJ required to expressly cite Polaski if she conducts an analysis pursuant to 20 C.F.R. § 404.1529.  Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).  Ultimately, if an ALJ "explicitly discredits a claimant's testimony and gives a good reason for doing so," a court should defer to her determination. Id.

Here, the ALJ determined that Fitzgerald's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 167).  Although the ALJ did not expressly cite Polaski or discuss every relevant factor, she stated in her decision that she considered all of Fitzgerald's symptoms based on the requirements of 20 C.F.R. § 404.1529 and

Social Security Ruling ("SSR") 16-3p, (Tr. 165), and it is clear that she considered several factors and used numerous facts in making her determination.

In her decision, the ALJ properly considered how Fitzgerald's pain and impairments improved with treatment.  (Tr. 166, 168–69); see also 20 C.F.R. § 404.1529(c)(3)(v) (stating treatment for relief or other symptoms may be considered when evaluating the intensity and persistence of a claimant's symptoms); Renstrom, 680 F.3d at 1066 (noting the ALJ discussed how the claimant "improved with treatment, including physical therapy, a TENS unit, and pain medications"); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (stating "impairments that are controllable or amendable to treatment do not support a finding of total disability").

A finding that Fitzgerald's pain and impairments improved with treatment is supported by substantial evidence.  For instance, after Fitzgerald underwent surgery and began therapy on his left thumb in October 2017, he reported that his thumb was "doing quite well with minimal pain" in January 2018 and causing "no significant complaints" as of October 2018.  (Tr. 411, 432, 556).  Similarly, after Fitzgerald underwent therapy on his left shoulder to address problems stemming from a long thoracic nerve injury, he reported in April 2018 that his shoulder problems were generally "tolerable," and it was observed that there had been "marked improvement in the majority of the muscles around the shoulder" and "essentially global improvement across the board."  (Tr. 463, 465–66, 477, 479, 496).  More recently,

after Fitzgerald underwent a spinal fusion in March 2019 to address severe central stenosis, he reported in May 2019 that he felt "significantly better" and that his symptoms had "significantly improved." (Tr. 663). Fitzgerald also reported that his weakness and neck pain had "nearly resolved." (Tr. 664).

The ALJ also properly considered Fitzgerald's work activity during his claimed period of disability. (Tr. 166–69); see also 20 C.F.R. § 404.1571 ("The work … that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial activity level. … Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (stating that "[w]orking generally demonstrates an ability to perform a substantial gainful activity" and noting the ALJ discussed how the claimant worked part-time during her claimed period of disability).

A finding that Fitzgerald worked after his alleged onset of disability, at least part-time, is supported by substantial evidence. Indeed, while Fitzgerald was unable to work for a period after his thumb surgery on October 12, 2017 (the date of his alleged onset of disability), he returned to part-time, light duty work in December 2017. (Tr. 452, 455–56, 458). The following month, Fitzgerald reported that he had carried a ladder for work and used his hands to wrap cable. (Tr. 463, 472). Fitzgerald also reported that he was experiencing only "mild difficulty" picking up

nails and carrying objects heavier than forty pounds.  (Tr. 463, 472, 475).  Although it is somewhat unclear when Fitzgerald stopped working entirely, the record indicates that he continued working at least until September 2018.  (Tr. 184, 563).  The record also indicates that Fitzgerald's work involved light construction, remodeling, manual labor, and delivery of materials.  (Tr. 372, 378, 477, 479, 562).

Finally, the ALJ properly considered inconsistencies between Fitzgerald's subjective complaints and his daily activities.  (Tr. 167); see also McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (noting the ALJ discussed the claimant's ability to "perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with … an electric cart"); Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2010) (stating "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain"); Goff, 421 F.3d at 792 (noting the claimant "was able to vacuum, wash dishes, do laundry, cook, shop, drive, and walk").

A finding of such inconsistencies is supported by substantial evidence.  For example, in his function report from February 2018, Fitzgerald indicated that he was able to walk, drive, do personal care, make simple meals, do light laundry, wash dishes, shop for food, visit with his girlfriend, and take care of his two dogs.  (Tr. 333–36).  At his hearing, Fitzgerald indicated that he was still able to drive and, to some extent, do personal care, make simple meals, wash dishes, fold laundry, and

take care of his dogs.  (Tr. 183, 191, 195, 200, 205–07).  While Fitzgerald suggested that he could no longer walk more than 100 yards without a break, his statements are undercut by the record, which indicates that he was able to walk over a mile in a single day in April 2019 and that he was "mobile and able to walk long distances with the assistance of a cane" in July 2019.  (Tr. 123, 509).

In light of these considerations and supporting facts, the ALJ did not err in discounting Fitzgerald's statements about the intensity, persistence, and limiting effects of his symptoms.  The ALJ explicitly found that Fitzgerald's statements were not entirely consistent with the medical and other evidence in the record, she identified good reasons for discounting the statements, and her determination is supported by substantial evidence on the record as a whole.  Accordingly, I will defer to the ALJ's determination.  See Medhaug, 578 F.3d at 816–17 (reversing the district court's conclusion that the ALJ erred in discounting the claimant's subjective complaints where the ALJ considered that the claimant responded to medical treatment, engaged in work activity after his alleged onset of disability, and performed daily activities that were inconsistent with his complaints of pain).

## B.    RFC Determinations

Fitzgerald also contends that reversal and remand is required because the ALJ's RFC determinations are not supported by substantial evidence.  When determining a claimant's RFC, an ALJ must consider "all relevant, credible evidence

in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Because a claimant's RFC is a medical question, an ALJ's RFC determination "must be supported by some medical evidence."  Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

As discussed above, for the period of October 12, 2017, through September 25, 2018, the ALJ found that Fitzgerald had the RFC to perform light work, including the ability to lift and carry up to twenty pounds occasionally and tens pounds frequently; stand and/or walk up to six hours in an eight-hour workday; sit up to six hours in an eight-hour workday; and occasionally reach overhead on his left side. (Tr. 165).  The ALJ also found that Fitzgerald could not climb ladders, ropes, or scaffolds.  (Id.)  Fitzgerald argues this determination is not supported by substantial evidence because, in making it, the ALJ relied on the prior administrative medical finding of the agency's medical consultant, Paul Spencer, M.D.  Fitzgerald objects to Dr. Spencer's finding because it was made before his second car accident and did not take into account the medical records of his orthopedic specialist, Shawn Kutnik, M.D., or evidence dated after February 2018.

To the extent Fitzgerald argues that the ALJ erred in relying on Dr. Spencer's finding because it was made before his second car accident, his argument is

misplaced.  Fitzgerald correctly notes that Dr. Spencer's finding was made before his second car accident on September 25, 2018.  (Tr. 230).  However, the ALJ relied on Dr. Spencer's finding only when assessing Fitzgerald's RFC before his second car accident.  (Tr. 167).  The ALJ did not rely on Dr. Spencer's finding when determining Fitzgerald's RFC after September 25, 2018.  (Tr. 169).  Therefore, the ALJ did not err in relying on Dr. Spencer's finding merely because of its timing.

Nor did the ALJ err more generally in relying on Dr. Spencer's finding.  A "prior administrative medical finding" is a finding, other than the ultimate determination of whether a claimant is disabled, about a medical issue made by a federal or state agency's medical or psychological consultant based on his or her review of the evidence in the claimant's record.  20 C.F.R. § 404.1513(a)(5).  While an ALJ is not required to adopt such a finding, she must consider it because the federal and state agencies' consultants are "highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 404.1513a(b)(1).  An ALJ must also explain in her decision how persuasive she found a prior administrative medical finding.  20 C.F.R. § 404.1520c(b).

Here, the ALJ stated in her decision that she found Dr. Spencer's finding persuasive for the period of October 12, 2017, through September 25, 2018.  (Tr. 167).  The ALJ then explained how Dr. Spencer's finding was consistent with other evidence in the record, including Fitzgerald's thumb surgery, limited treatment

14

before September 2018, treatment notes, lack of mental health treatment and medication, and daily activities. (Id.) Before determining that Dr. Spencer's finding was consistent with other evidence in the record, the ALJ also discussed both Dr. Kutnik's medical records and evidence dated after February 2018. (Tr. 166). Because the ALJ determined that Dr. Spencer's finding was consistent with other evidence in the record, she did not err in finding it persuasive, even if Dr. Spencer himself did not consider Dr. Kutnik's medical records or evidence dated after February 2018. See 20 C.F.R. § 404.1520c(c)(2) (stating the more consistent a prior administrative medical finding is with evidence in the record, the more persuasive it will be); Morton v. Saul, No. 2:19-CV-92 RLW, 2021 WL 307552, at *8 (E.D. Mo. Jan. 29, 2021) ("The ALJ's reasonable reliance on an opinion from a highly qualified expert is within the zone of choice.").

Furthermore, the ALJ's RFC determination is supported by substantial evidence, including some medical evidence. The RFC accounts for Fitzgerald's left hand and upper extremity impairments by imposing exertional, postural, and climbing limitations. (Tr. 165). The RFC is also supported by objective findings from the relevant period, including findings of excellent stability in Fitzgerald's left thumb joint, (Tr. 432, 496); full or near full range of motion in Fitzgerald's left hand, (Tr. 465, 496); and largely normal strength and range of motion in Fitzgerald's left shoulder, (Tr. 476, 482, 485, 488, 490). The RFC is further supported by evidence

15

indicating that Fitzgerald's impairments improved with treatment, (Tr. 432, 449, 453, 461, 465, 472, 481, 496, 556), evidence regarding Fitzgerald's work and other activities during the relevant period, (Tr. 184, 333–36, 452, 456, 458, 463, 469, 472, 475),[4] and a lack of significant work restrictions imposed upon Fitzgerald by his medical providers.

For the period of September 25, 2018, through September 27, 2019, the ALJ found that Fitzgerald had the RFC to perform sedentary work, including the ability to lift and carry up to ten pounds occasionally and less than ten pounds frequently; stand and/or walk up to two hours in an eight-hour workday; sit up to six hours in an eight-hour workday; frequently handle and finger; and occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and reach overhead. (Tr. 168). The ALJ also found that Fitzgerald could not climb ladders, ropes, or scaffolds and that he needed to avoid extreme cold, humidity, wetness, vibration, and hazards. (Id.) Fitzgerald argues this determination is not supported by substantial evidence because it is not based on any medical evidence and instead is based on the ALJ's own inferences from medical records.

Fitzgerald is correct that an ALJ "may not draw upon [her] own inferences from medical reports" in determining a claimant's RFC. Nevland v. Apfel, 204 F.3d

---

[4] Notably, the record shows that Fitzgerald's work consisted of light construction, remodeling, manual labor, and delivery of materials. (Tr. 184, 372, 378, 562–63). Such work activity, even if performed only part-time, undercuts Fitzgerald's claim of total disability.

853, 858 (8th Cir. 2000).    There is no requirement, however, that an RFC determination "be supported by a specific medical opinion."  Hensley, 829 F.3d at 932 (citing Myers v. Colvin, 721 F.3d 521, 526–27 (8th Cir. 2013) and Perks v. Astrue, 687 F.3d 1086, 1092–93 (8th Cir. 2012)).  Indeed, "[i]n the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians can provide affirmative medical evidence'" supporting an ALJ's RFC determination.  Id. (quoting Johnson v. Astrue, 628 F.3d 991, 995 (8th Cir. 2011)).

Here, the ALJ's RFC determination is supported by some medical evidence and substantial evidence on the record as a whole.  The RFC accounts for Fitzgerald's back, neck, upper extremity, and left-hand impairments by imposing exertional, postural, and other non-exertional limitations.  (Tr. 168).  The RFC is also supported by objective findings from the relevant period, including findings of good range of motion in Fitzgerald's left thumb, (Tr. 556); full range of motion in Fitzgerald's left hand, (Tr. 557); full range of motion in Fitzgerald's left arm, (id.); largely normal strength in Fitzgerald's upper extremities, (Tr. 539); and reduced gait speed but good overall cadence and steadiness, (id.)  The RFC is further supported by evidence indicating that Fitzgerald's impairments improved with treatment, (Tr. 556–57, 663–64), as well as evidence indicating that Fitzgerald was able to walk, drive, and perform other daily activities during the relevant period, (Tr. 123, 183, 191, 195, 200, 205–07, 509).

17

In sum, the ALJ's decision demonstrates that she evaluated all of the medical and other evidence in the record and adequately explained her reasons for the weight given to the evidence.  While Fitzgerald may believe the ALJ should have assessed the medical and other evidence differently, it is not my role to reweigh evidence considered by an ALJ.  See Hensley, 829 F.3d at 934.  It is ultimately a claimant's burden to demonstrate his RFC, id. at 932, and Fitzgerald has failed to show that his RFCs should be more limited.  Because the ALJ's RFC determinations are supported by substantial evidence on the record as a whole, including some medical evidence, I will affirm the Commissioner's decision as within a "reasonable zone of choice." Fentress v. Berryhill, 854 F.3d 1016, 1021 (8th Cir. 2017).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed, and Plaintiff Donald Fitzgerald's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 28th day of February 2022.